[Civ. No. 9734. First Appellate District, Division Two.—February 25, 1935.]

In the Matter of the Estate of CONSTANTINE LEPORI, Deceased. CARLA CECILIA LEPORI, a Minor, etc., Appellant, v. MARY SHERMAN et al., as Executors, etc., et al., Respondents.

Wade W. Moore, Thomas M. Carlson and Robert Collins for Appellant.

Eugene K. Sturgis and Tinning & DeLap for Respondents.

NOURSE, P. J.—A contest before probate of the last will of Constantine Lepori was heard by the court sitting without a jury. The contestant is a granddaughter of the deceased, a minor of five years of age, and the only surviving lineal heir. The proponents are nephews and nieces of the deceased. The grounds of the contest were the alleged undue influence of these relatives, particularly Mary Sherman, and the alleged incompetency of the deceased. The trial court found against contestant on both issues, and the only question raised on this appeal is the sufficiency of the evidence to support these findings.

The testator was about seventy-five years of age at the time the will was executed. He had been actively engaged in

business in Pittsburg, Contra Costa County, and had accumulated a fortune estimated above $500,000 in 1929. He died on January 31, 1932, and the appraised value of his estate at that time was $143,000 with an indebtedness of about $60,000. A large part of the estate was in shares of the Transamerica Corporation, which was of fluctuating value during this period. In September, 1929, when the deceased estimated his estate at a high value because of the almost fabulous value placed on this stock, he executed a will in which he made a number of large specific bequests and left the residue in trust to pay certain annuities and to pay for the support and education of the contestant, the *corpus* to go to her when she reached the age of forty. In this will the testator made ample provision for the mother of contestant, the daughter-in-law of the testator, so that she could maintain herself comfortably during ·contestant's minority and properly care for her education and training.

After the execution of this will the testator became very ill and was under medical care with the aid of a special male nurse and of his daughter-in-law until August, 1931, when he went to live with his niece, Mary Sherman, at her home in Napa County. From this time until his death Mary Sherman took complete charge of the deceased. She discharged his male nurse and employed her mother-in-law in his place. She wrote his letters and assumed complete control of his business affairs, dictating the sale of properties, the collection of accounts, and the extension and settlement of loans and mortgages. Testator's business was · handled through an employee of a bank in Pittsburg, who held a general power of attorney from the deceased. During all this time the deceased was becoming continually weaker mentally and physically so that Mary Sherman, on numerous occasions, wrote to this agent that the deceased was not in condition to discuss matters of business, which, for that reason, these two assumed to settle for themselves. In December, 1931, Mary Sherman wrote to this agent stating that her uncle wished to execute a new will and inclosing memoranda for that purpose. The agent, an employee of the American Trust Company branch at Pittsburg, forwarded the memoranda to the head office with a request that a will be prepared eliminating the granddaughter as residuary legatee and substituting Mary Sherman, her sisters

and her brother as such. A will was prepared in accord with this memoranda and executed on January 18, 1932, thirteen days before testator's death. This is the will under contest.

On the issue of undue influence the appellant relies upon the presumption arising when one who unduly profits by a will and who sustains a confidential relationship to the testator actively participates in procuring its execution. (*Estate of Lances,* 216 Cal. 397, 403 [14 Pac. (2d) 768].) When this presumption arises the burden of proof is cast on the proponents to overcome the presumption. The respondents proclaim that they have met this burden as to each of the three items upon which the presumption rests but assert that if they have been successful as to one item the presumption falls because the rule is that all three must be present, citing *Estate of Baird,* 176 Cal. 381, 384 [168 Pac. 561]. It is manifest from the record that, during the last two years of his life, the testator was in a very weak mental and physical condition and that relatives took advantage of this condition to gain profit for themselves. When he was confined in a sanatorium in San Diego he was visited by his daughter-in-law. During that time he executed a codicil to his will revoking all allowances made therein except those to his daughter-in-law and granddaughter. On August 22, 1931, seven days after Mary Sherman took him under her care, he executed a revocation of this codicil written in the hand of Mary Sherman. The will of 1929 left the bulk of the residue in trust for the granddaughter and made minor bequests to Mary Sherman and to her brother and two sisters. The will of 1932 left this residue to these four and thus gave to them all the liquid assets of the estate cutting down the granddaughter to a piece of real property in Fruitvale of doubtful value with an estimated income of $50 dollars a month without allowances for taxes, insurance or upkeep.

On the issue of undue influence the evidence is confined to the activities of Mary Sherman and, in a small degree, of Augosto Lepori, her brother. We need not review the evidence for both sides because the question on appeal is simply: Is there substantial evidence to support the finding of the trial court that *undue* influence was not used? We may agree with the statement of the trial judge made in

open court that the testimony of Mary Sherman and her brother was colored and not frank in regard to either the physical or mental condition of the testator. The same may be said of some of the other testimony offered by respondents. But evidence was received from disinterested witnesses tending to show that the proponents did not "actively participate in the execution of the will", and this is sufficient to dispel the presumption relied on. Since the trial court believed this evidence its finding that undue influence was not used properly followed.

■ Upon the ground of mental incompetence three physicians who had active care of the testator until a few months before he was taken to the Sherman home testified that he was suffering from arteriosclerosis, edema of the brain and senile dementia, all of which they testified were progressive and incurable. This evidence was not controverted by respondents. It was supplemented by the testimony of intimate acquaintances who expressed the opinion that the testator was incompetent because of peculiarities noted at different times during the period following his acute illness in the spring of 1931.

To controvert this evidence the respondents tendered the testimony of the physician who treated the testator during his last illness and of business associates, all of whom expressed the opinion that the testator was competent at the times they observed him. It would serve no purpose to recite this evidence in detail. It is sufficient to say that the evidence as a whole tended to show that the testator was weak in mind and body for a long time prior to his death and that he was frequently susceptible to the suggestion and influence of those about him; but that throughout all this period he had lucid intervals during which his mind functioned normally. The testimony offered by respondents was sufficient to show that, at the time the will was executed, the testator's mind was clear to that degree which would support the finding that he had sufficient knowledge of the testamentary act. This is the criterion upon which the question of competency is to be determined. (*Estate of Perkins,* 195 Cal. 699, 703 [235 Pac. 45].)

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 27, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 25, 1935.

Curtis, J., voted for a hearing.