[Civ. No. 10845. First Appellate District, Division Two.—February 28, 1939.]

In the Matter of the Estate of MARY JOHNSON, Deceased. ISABEL GARRETT, as Guardian, etc., Appellant, v. DANIEL RYGEL, as Special Administrator, etc., et al., Respondents.

Anthony, Harwood & Rogers, Leo C. Dunnell, Albert C. Wollenberg, Carlson & Collins and H. V. Greenwood for Appellant.

T. H. DeLap and Tinning & DeLap for Respondents.

NOURSE, P. J.—The appellant, as administratrix of the estate of Ira H. Spangler, deceased, contested the probate of the will of Mary Johnson, who was the former wife of Ira H. Spangler. The cause was tried before the court without a jury, and judgment was rendered in favor of proponents. Mental incapacity and undue influence were the basis of the contest. On the appeal it is argued, among the grounds for reversal of the judgment, that the charges of undue influence were proved by uncontroverted evidence, and that the trial court erred in its rulings and findings on the issue of confidential relationship of the beneficiaries. As the judgment must be reversed upon these grounds it is unnecessary to burden the opinion with discussion of other grounds raised.

In October, 1930, Mary Johnson and Ira Spangler intermarried. They lived in Napa for a while and moved to San Francisco in November, 1931, where they lived until January, 1936. Mary Johnson obtained an estate of approximately $130,000 from her first husband. She was more than seventy years of age when she died in October, 1936. Her last husband was about fifty-eight years of age at the time of his death in January, 1937. In April, 1931, Mary Spangler voluntarily executed a will which her own attorney prepared for her and which left all her property to her husband. No evidence of estrangement between the parties appears in the record until the respondents herein came into the picture as hereinafter related. In October, 1935, the husband became

very ill and was taken to a hospital in San Francisco. He did not survive the illness, but was continually confined because of it until his death in January, 1937.

A considerable part of the property of Mrs. Spangler had been placed in trust with a local bank and the income made payable on the check of Ira. From the time of his hospitalization the latter was in such weak physical and mental condition that he was unable to care for himself or his wife. Checks were written by a clerk of the bank and by him taken to the patient who signed by cross only. Mrs. Spangler had become ill at about the same time and a nurse or housekeeper was employed to care for her. Expenses for the upkeep of the house and of the care of both husband and wife were paid by the bank in the manner stated upon the request of the nurses or others in charge of the patients. The condition of both became so critical that an officer of the bank suggested to Mrs. Garrett that she apply for letters of guardianship. Such an application was filed in the superior court in San Francisco by Mrs. Garrett, who was the only child of the Spanglers, being a daughter of Ira by a former marriage. This started the activities of the respondents.

These petitions were filed on January 10, 1936, when both patients were admittedly incompetent and unable to take care of their property. When notice of the filing was published in "The Recorder" the respondent Daniel Rygel, an attorney at law, rushed to the hospital where the husband was confined, and there found the appellant to whom he offered to see that she would inherit a large part of the estate if she would dismiss the attorneys who had filed the petitions and substitute him in their stead. Unsuccessful, he went to the apartment where Mrs. Spangler was confined and, by misrepresentations of the treatment of her by her husband and of his weakened mental and physical condition, persuaded her to employ J. F. Riley and himself to represent her. In this scheme a written contract of employment on a percentage fee was executed on January 13, 1936, between Mrs. Spangler and Riley and Rygel as her attorneys. They collected and retained for themselves over $10,000 through this contract. Four days later—January 16th—they had her verify a complaint in divorce which reads like the voice of Rygel and Riley. This complaint was filed on January 17th, and on the same day these attorneys filed their petition to have their client declared incompetent and named a guardian of their

own selection, who was thereafter always subject to their will. Both petitions were filed in the county of Napa, which the attorneys well knew was not the residence of their client. The divorce action was transferred to San Francisco for that reason, and a property settlement was made by the guardians of these two old incompetents and a decree of divorce entered on application of the attorneys for Mrs. Spangler. This decree had not become final when the death of the parties occurred.

Having removed their client to Napa where they hid her from her husband and stepdaughter, Riley and Rygel had a will executed in May, 1936, wherein all the property, except a special bequest of $5,000 to the guardian selected by her attorneys, was left to Mrs. Rygel, who prior to the events here recorded since January 11, 1936, was unknown to the testatrix. This will named "my attorney Daniel Rygel" as executor to serve without bonds. This express designation of Rygel as attorney appeared dangerous in case of a contest, and a new will was prepared by Riley and executed on September 16, 1936. This was in the precise terms of the former will except that the words "my attorney" were omitted. This is the will that is under contest. The will of May, 1936, has not been offered for probate because the evidence of the mental incapacity of the testatrix at that time was too strong to meet a contest. The will of September, 1936, was in the handwriting of Riley, and was written by him in a bedroom of the Rygel home at a time when the testatrix was paralyzed on the left side, had difficulty in her speech, and was in such a serious condition from cerebral hemorrhages that she had been given neohemoplastin and amytal. The doctor in attendance would not allow her to sit up to sign the will, but guided her hand while she made her mark, her name being written in by Riley. She died soon thereafter, and the doctor who had been in attendance upon her at the time the will was written certified as the cause of death "cerebral hemorrhage".

It is in the evidence and uncontroverted that from January 11, 1936, to the date of the death of the testatrix these attorneys carried on a premeditated course of conduct to obtain control of the property. They admittedly misrepresented the facts to her regarding the condition of her husband, poisoned her mind against him and his daughter, and pretended to her that they were her only friends. They col-

lected enormous fees for inconsequential service, traveled about the country at her expense, purchased an automobile from the funds in the hands of her guardian at a time when she was unable to leave her bed. They hid her from her friends in Napa, and then moved her to Rygel's house in Berkeley, where she was likewise concealed, and where Mrs. Rygel was paid $200 a month for her care, which was in addition to the regular fees paid to a nurse. During this time Rygel boasted among his friends that "We are sitting on top of the world; we have a new car, Augusta has a maid, and the money is rolling in." Riley died during the course of the trial, and it was thereafter discovered that more than $10,000 in cash and bonds belonging to Mary Spangler had gone into his estate received by Rygel as attorney for Mary Spangler, but not by him turned over to her guardian. The respondents have throughout the trial and on this appeal given as their justification for their conduct that, if they had not taken these proceedings, the appellant would have accomplished what they have done. But we have the positive evidence of how some of these respondents looted the estate, while on the other hand we merely have their suspicions and charges that the appellant might have done the same if they had not prevented her. There is no principle of law which justifies one wrong because of another, or of one that might be threatened or anticipated.

Upon this evidence, the material parts of which are not disputed in any way, it would seem to follow as a matter of course that any court or jury would be compelled to find undue influence in the execution of the will. The finding here adverse to the contestant can be accounted for in only one way—the error of the trial court in finding that there was no confidential relation between the beneficiaries and the testatrix. Here the undisputed evidence is that for many years before the events narrated, Riley had been the regular attorney and counsel for the testatrix. From January 11, 1936, he and Rygel appeared together as such. They executed a joint contract of employment with her, they prepared and filed petitions and complaints in court proceedings, they appeared and represented themselves in open court as her attorneys, and they were the sole attorneys for her guardian whom they selected and had appointed. Riley prepared the will of April, 1931, and Rygel was a witness to it. The two maintained a joint law office in San Francisco, and frequently

appeared together in litigation. This relation continued up to the time of her death. Though the facts here stated have not been disputed, Rygel, as a witness in the trial, repeatedly asserted that he was not *joined* as counsel with Riley as stated, but was merely *associated* with him, and that he was not otherwise the attorney and advisor of the deceased.

 Having erroneously drawn the conclusion of law on these admitted facts, that there was no confidential relation, the trial court fell into the further error in ruling on the issue of the burden of proof. It can be taken as a settled rule of law in this state that "where one who unduly profits by a will sustains a confidential relationship to the testator and actively participates in procuring the execution of the will, the burden is upon him to show that the will was not induced by his undue influence". (*Estate of Lances*, 216 Cal. 397, 403 [14 Pac. (2d) 768]; *Estate of Witt*, 198 Cal. 407, 419 [245 Pac. 197]; *Estate of Yale*, 214 Cal. 115, 122, 123 [4 Pac. (2d) 153]; *Herbert* v. *Lankershim*, 9 Cal. (2d) 409, 481 [71 Pac. (2d) 220]; *Estate of Lepori*, 4 Cal. App. (2d) 761, 764 [41 Pac. (2d) 970].) The presumption of undue influence which arises from these relations shifts the burden of proof to the proponents to overcome it. We may go one step further in applying the rule to the case at hand— when the presumption is present *and no evidence is offered to overcome it* the court or jury is bound to find in accordance with the presumption. Whether we call this a finding of fact or a conclusion of law is not material. It has some of the elements of both. But it is a rule of law and a rule of property which cannot be lightly cast aside. If the undue influence is thus *proved* to exist the contestants are entitled to a judgment.

 In the argument here respondents contend that since Riley drew the will and Mrs. Rygel was the legatee, the element of "activity" of the beneficiaries is not present. The argument is specious, but illusory. At the very moment when the will was signed Mr. and Mrs. Rygel were in their own bedroom where they could not see or hear what was transpiring in the room of their patient, but throughout the entire day while the patient was suffering from a paralytic stroke and cerebral hemorrhage Mrs. Rygel alone was with her, and for a period of ten months these two with the aid of Riley were continually working upon their patient to that end.

Throughout the period when these parties had the decedent in their control, Rygel frequently urged her to make a will and to remember Riley. They took her on long rides, and when she returned she told her nurse that she was exhausted because they had tried to force her to make a will and that she did not want to make one. This evidence is not disputed in any manner. It is confirmed by the testimony of Rygel that he could not get her to make a will, that she could not remember what property she owned. During this period she could not remember that she had a husband except on those occasions when these parties represented to her that he was endeavoring to get all her property. They did not tell her that he was hopelessly insane, confined to a hospital because of a fatal illness, or that they had taken all the funds into the hands of their chosen guardian and left the husband without anything for his care until his guardian was compelled to make a settlement with them.

One other point requires consideration. The trial court found that the contestant had no capacity to sue because of the property settlement in the divorce action. This finding was based upon these facts. When the guardian of the decedent had taken all the funds into his hands, the guardian of the husband made a property settlement in the divorce action wherein she agreed to waive all "rights of inheritance" in the estate of decedent on behalf of her ward. It is appellant's contention that, in waiving the rights of inheritance, the husband did not waive his right to take as a legatee under the will. This contention must be sustained. (*Estate of Crane*, 6 Cal. (2d) 218 [57 Pac. (2d) 476, 104 A. L. R. 1101].) The interlocutory decree of divorce had not become final before the death of the parties. The will of April, 1931, leaving all the property to Ira Spangler had never been revoked. The appellant was the natural heir of Ira Spangler and as such was a proper party to contest this will of September 16, 1936. (*Estate of Langley*, 140 Cal. 126, 130 [73 Pac. 824]; *Estate of Visaxis*, 95 Cal. App. 617, 620 [273 Pac. 165].)

The judgment is reversed, appellant to have her costs against the respondents.

Sturtevant, J., concurred.

Spence, J., concurred in the judgment.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 27, 1939.