[Civ. No. 2874. Fourth Dist. Dec. 21, 1943.]

Estate of LOIS HUSSEY HARKLEROAD, Deceased.
GLADYS H. HUSSEY, as Special Administratrix, etc.,
Appellant, v. CARL H. HARKLEROAD, Respondent.

Philip Storer Thacher and Lester J. Penry for Appellant.

Dempster McKee for Respondent.

BARNARD, P. J.—This is an appeal from a portion of
an order admitting a will to probate.

Mrs. Harkleroad died on December 18, 1940. In a will,
executed two hours before her death, she appointed her
mother, Gladys H. Hussey, as executrix, gave certain real
property to her mother together with all personal property

located thereon, gave all the rest of her property to her mother in trust for the benefit of her three minor children, and provided that her husband should receive nothing. The mother filed a petition for the probate of this will. The husband of the deceased filed a contest before probate. At the hearing, by mutual consent, the court proceeded to hear the petition for the probate of the will, allowing the attorney for the contestant to examine the witnesses (see *Estate of Relph*, 192 Cal. 451 [221 P. 361]), and no evidence was offered by the contestant who later filed a dismissal of his contest.

In its order the court found that the portion of the will which purported to give certain real and personal property to the mother was made under the undue influence of Mrs. Hussey; that at the time of the making of the will the deceased was on her deathbed, extremely weak and unable to speak; that Mrs. Hussey was the mother of the deceased, was active in the preparation of the will and unduly profited thereby; and that the remainder of the will was the free and voluntary act and will of the deceased and should be admitted to probate. It was then ordered that probate be denied to that part of the will which purported to give the real property and the personal property located thereon to the mother, and that the remainder of the will should be admitted to probate. This appeal was taken by Mrs. Hussey, who had been appointed special administratrix, from those portions of the order which found to the effect that undue influence had been used by her, and which denied probate to that part of the will which left certain real and personal property to her.

The sole question presented is whether the court's action in this regard is sustained by the evidence, in which there is no conflict and all of which appears in the testimony of witnesses offered by the appellant. The testatrix was in a hospital, her mother was with her and it was known that she could not live. During the night of December 17-18, two nurses had called on her very frequently and she had been able to answer yes or no when they asked her if she wanted various things. About 6:00 o'clock on the morning of December 18, a nurse overheard the testatrix and her mother "talking" about some matters that needed legal attention, and reported this to the head nurse. The head nurse then told the mother that if she needed an attorney she better call him at once. The mother asked if it would not be "soon

enough to call him by office hours." The nurse replied that she was afraid this would be too late. A lawyer, who had previously acted for both the mother and the testatrix, was called and arrived at the hospital about 7 o'clock.

The testatrix was then unable to speak a word. She was extremely weak, her breathing was labored, she had been given a heart stimulant, and during all times material here oxygen was being continuously administered to her through her nose. All information concerning what should be put into the will was furnished to the lawyer by the mother. He then asked the mother to leave the room, which she did for four or five minutes. During that interval he asked the testatrix if she wanted this real estate to go to her mother, if she wanted the rest of her property to go to her children equally, if she wanted her mother to look after the property for the children and if she would like to waive bond for her mother as executrix. To each of these questions the testatrix nodded her head. He then asked her if she wished her husband to have anything and if she would rather have her husband look after the property which the children would get. In reply to each of these questions she shook her head. He then went to the office of the hospital and typed the will.

When he returned to the room he read the will to the testatrix and he testified that she seemed to understand. He asked her if each provision was as she desired and she nodded in the affirmative. The mother and the head nurse raised the testatrix while she signed the will and the mother held her arm up "at about the elbow." The nurse testified that while the will was being signed it was necessary for the mother to arouse the testatrix more than once in order to get her to go on with the transaction; that the testatrix "would sort of sink back"; that the mother would then say "Lois, do you hear what I say"; that the testatrix would nod her head yes; and that "then she would go on again to—oh, it just seemed sort of too weakened, hard put to arouse her to the importance of what was going on." The lawyer testified that the actual writing of the signature took a considerable length of time, that the testatrix "made the first part" and that after a slight pause in which both he and the mother asked if she could complete the signature she "made what is the second half of the signature." In this signature the first part, "Lois H. Ha," can be made out although a large number of marks following the letter

"L" indicate that the writer did not know what she was doing when she made them. The remainder of the signature is entirely illegible and consists of two sets of meaningless marks. It might well be questioned whether any of the will should be admitted to probate, but we are here concerned only with the portion of the order appealed from. After the will was thus signed the lawyer asked the testatrix if this was her will and if she desired him and the nurse to sign as witnesses thereto. She nodded her head and they signed as witnesses there in the room. The testatrix died two hours later.

There is also evidence that the real property mentioned in that part of the will to which probate was refused was purchased by Mrs. Hussey with her own funds, that she and the testatrix lived on the property for some years while both were working, and that some of the earnings of the daughter may have gone into improvements on the place. We find no evidence as to who paid for the personal property mentioned in that part of the will. In any event, some years before the will was executed the property was placed in the name of Mrs. Hussey and the testatrix as joint tenants. Some time later, the testatrix was sued in connection with an automobile accident and at her request her mother conveyed the entire property to her to enable her to file a homestead thereon. That litigation terminated in favor of the testatrix. Some months, but not more than a year, before the will was executed the lawyer who drew the will received a communication from Mrs. Hussey "asking me to see that Lois deeded the property back to her as it had been before." He talked the matter over with the daughter and while he could not remember exactly what she said he testified that he was left with the impression that she would attend to the matter at her convenience. This, however, was never done. It also appears that the testatrix had for some considerable time been estranged from her husband.

The appellant contends that there is no evidence to support the court's findings of undue influence on her part in connection with the portion of the will in question. It is further argued that no presumption of undue influence arises from proof of activity in the execution of a will on the part of one who occupies a confidential relationship to the decedent unless it also appears that such a person has unduly profited thereby. It is not contended that there was not a

confidential relationship here between mother and daughter nor that the appellant was not active in securing the execution of this will, but it is earnestly insisted that it cannot be said that the appellant unduly profited from the execution of this will because this real property really belonged to her and she got nothing more than that to which she was properly entitled.

The general rule is thus stated in *Estate of Witt*, 198 Cal. 407 [245 P. 197]: "A presumption of undue influence arises from proof of the existence of a confidential relation between the testatrix and the beneficiary 'coupled with activity on the part of the latter in the preparation of the will.'" In some cases, as in *Estate of Johnson*, 31 Cal. App.2d 251 [87 P.2d 900], the rule is expressed that "'where one who unduly profits by a will sustains a confidential relationship to the testator and actively participates in procuring the execution of the will, the burden is upon him to show that the will was not induced by his undue influence.'" Both of these expressions of the rule are essentially the same, although the first does not refer to "one who unduly profits by a will." There would be no need for such a presumption and it would serve no purpose where any supposed influence had accomplished nothing.

In the instant case, title to this real property stood in the name of the testatrix who had a husband and children, and the appellant would have had no right of inheritance with respect to her property and would not have shared therein in the absence of a will. Assuming that the appellant originally owned the property, she had conveyed a joint interest therein to her daughter and had thereafter transferred the entire title to her. It is suggestive that when she later desired to have the property put back into joint tenancy she found it necessary to ask a lawyer to induce her daughter to have this done. Even this was not successful and the daughter did not comply with the request thus made of her. The portion of the will to which probate is denied would have given the appellant something which she would not have otherwise received and we think that, under these circumstances, the usual rule with respect to a presumption of undue influence applies. Not only did such a presumption here exist but no evidence was offered to overcome it and all of the evidence tends to support that presumption. (See *Estate of Johnson*, 31 Cal.App.2d 251 [87 P.2d 900].)

Aside from any such presumption the evidence here, with the reasonable inferences therefrom, is sufficient to support the findings and that part of the order which are attacked. Direct evidence of undue influence will rarely be found in such cases. Such questions must usually be decided from evidence showing the general circumstances, with the inferences reasonably to be drawn therefrom. Here, no one except the appellant had ever discussed her intentions with respect to her will with the testatrix at any time when she was able to talk. All information was furnished by the appellant and at all times material to the execution of the will the testatrix was unable to speak and was in a state of most extreme weakness. The appellant was not only "hard put to arouse her to the importance of what was going on" but the testatrix was actually unable to write her name. It would be hard to imagine a case disclosing greater activity on the part of the person charged with exercising undue influence and that activity resulted, if this part of the will should be sustained, in giving to the appellant something which she would not otherwise have received, and which she had previously tried, without success, to obtain. Certainly, these circumstances justify an inference that undue influence was used. If we could assume that a contrary inference is also possible the matter would still be one for the trial court and its conclusion thereon cannot be disturbed. The evidence, with the inferences which may reasonably be drawn therefrom, is sufficient to support the findings and order which are here in question. Under any view of the matter the burden resting upon the appellant was not sustained.

The portion of the order appealed from is affirmed.

Marks, J., and Griffin, J., concurred.