[Civ. No. 35746. Second Dist., Div. One. July 23, 1970.]

Estate of HARRIETTE L. PETERS, Deceased.
HAROLD L. WALSMITH, JR., et al., Plaintiffs and Respondents, v.
FRED J. PELTZER et al., Defendants and Appellants.

918

## COUNSEL

Brathwaite, Vaughn & Rogers and James F. Rogers for Defendants and Appellants.

Reiter & Reiter and Ellis D. Reiter, Jr., for Plaintiffs and Respondents.

## OPINION

**LILLIE, Acting P. J.**—Harriette L. Peters died on October 15, 1968, aged 88, leaving a witnessed will executed some two months earlier (August 27, 1968). Thereunder appellant Peltzer, who drafted the instrument, was left one-fourth of her estate, the remainder went to her three grandchildren. It was denied probate following a nonjury trial of the contest brought by the grandchildren, also beneficiaries (but to the exclusion of Peltzer) under an earlier will. The court concluded that the purported will was made and executed as a result of the undue influence exercised by appellant Peltzer.[1] Concurrent with its denial of probate of the 1968 will, the court admitted to probate the earlier will and a codicil thereto. This appeal is from the judgment denying probate of the 1968 will.

The sole assignment of error is the insufficiency of the evidence to support the finding of undue influence. ■ "The rules of evidence, the weight to be accorded to the evidence, and the province of a reviewing court, are the same in a will contest as in any other civil case." (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].) ■ Too, in reviewing the evidence all conflicts must be resolved in favor of the prevailing party

---

[1]Appellant Vaughn is a party to this proceeding solely by reason of the fact that she petitioned for probate of the instrument asking for the issuance to her of letters of administration with-the-will-annexed; accordingly, when mention is hereinafter made of "appellant," it will refer to Peltzer.

below and all legitimate and reasonable inferences indulged in to uphold the finding of the trier of fact. (*Estate of Lauth,* 180 Cal.App.2d 313, 317 [4 Cal.Rptr. 764].) ■ Viewed in the above light, and measured by established principles governing this type of litigation, the evidence sufficiently supports the trial court's determination.

The relevant facts are these: Appellant had been a friend of decedent for almost 30 years. Although he spent much of his time traveling about the country doing various jobs, he kept in touch with her by letter; and when in Los Angeles, he would always visit her, talk about old times and assist her in any way he could. When appellant's mother died in 1964, decedent wrote him "a nice letter, and she said she always felt that she was a second mother to me . . . ." He testified further: "I thought I was a very close friend of Mrs. Peters." While in Los Angeles in August of 1968, he visited her and did some banking for her and they had a meal together. Later that month, when he went to say good-bye before again leaving town, decedent told appellant that her health was not too good, she would not be around too long and she wanted to do something for him.[2] She then asked appellant to call an attorney and have him draft a will. When the attorney contacted by appellant said he was busy and could not draft a will, appellant suggested to decedent that the matter could wait until he came back to Los Angeles; to such suggestion, however, decedent replied, "That may be too late." Appellant then borrowed a typewriter from a friend who also had a form of will in his possession, and using the latter as a guide, typed out the instrument offered for probate. After it was read by decedent, appellant drove her to a nearby real estate office where two witnesses were secured. She signed the will in their presence, and they signed in her presence. There were internal discrepancies in the testimony of the sole subscribing witness called to establish due execution (Prob. Code, § 50) which the trial court, by deciding that a prima facie case had been made, resolved in appellants' favor; subsequently, upon the oral rendition of its decision as to undue influence, the trial court advised respondents' counsel that the question of lack of due execution had become "moot"— no finding was thereafter made as to that ground of contest.

Appellants rely on *Estate of Lingenfelter,* 38 Cal.2d 571, 585 [241 P.2d 990], where certain "indicia" of undue influence are restated. But that case, in turn, makes reference (p. 585) to *Estate of Graves,* 202 Cal. 258, 262 [259 P. 935], which lists the following facts as indicative of undue influence: " 'The relations between appellant and the decedent afforded to appellant an opportunity to control the testamentary act; the

---

[2] One of the respondents testified that his grandmother suffered a stroke in the latter part of 1967; thereafter her health declined to the point where she gave him a power of attorney to conduct her business affairs.

decedent's condition was such as to permit of a subversion of her freedom of will; the appellant was active in procuring the instrument to be executed. In addition, appellant unduly profited as beneficiary under the will. While none of these circumstances, standing alone, has the effect of creating a presumption against the validity of the instrument, their probative force, in combination, is to impose upon the proponent the obligation of presenting evidence of volition, and to make the question as to undue influence one of fact for the jury's determination.' " (P. 585.) Accordingly, the question here is whether there was proof sufficient to establish the concurrence of all the foregoing factors so that the burden shifted to appellants to prove that the will was not the product of the undue influence claimed.

It is first contended that there was no evidence of a confidential relationship between decedent and appellant Peltzer. While he once lived in her home some 28 years previously, it is pointed out that the parties thereafter visited only infrequently and corresponded irregularly; in short, while they were good friends, Peltzer was never given an opportunity by decedent to wield any influence over her decisions, testamentary or otherwise. As shown earlier, however, appellant himself testified that decedent regarded herself as his "second mother" and he was "a very close friend of Mrs. Peters." In *Estate of Cover,* 188 Cal. 133, 143 [204 P. 583], the court defined the terms "confidential relation" as follows: "Confidential and fiduciary relations are, in law, synonymous, and may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another." ■ The right of testamentary disposition being a sacred one, certainly the court could properly infer that decedent, by asking him to draft her last will and testament, reposed the necessary confidence and trust in appellant's integrity and fidelity. Hence, "When 'the one in whom confidence is reposed actively participates in a transaction whereby he obtains a gift from . . . the other, a presumption of undue influence arises and casts on the party who has gained the gift . . . the burden of rebutting it and showing fairness and good faith.' [Citation.]" (*Estate of Holmes,* 233 Cal.App.2d 464, 467 [43 Cal.Rptr. 693].) By reason of the foregoing facts (scant though they be) and the legal principles applicable thereto, we cannot say as a matter of law that no confidential relationship existed between the parties at the time in question. ■ Appellants seemingly overlook the established rule on appeal that " ' "When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." [Citations.]' " (*Estate of Nigro,* 243 Cal.App.2d 152, 156 [52 Cal. Rptr. 128].)

Among other "indicia" of undue influence mentioned in *Lingenfelter, supra* (38 Cal.2d 571, 585), is the unnaturalness of the instrument offered

for probate; appellants accordingly assert that a will which gives three-fourths of the estate to respondents, the natural objects of decedent's bounty, and one-fourth to a stranger (Peltzer) is not unnatural. It is further argued that the three grandchildren, respondents herein, will take the same proportion of the estate under the earlier will and codicil admitted to probate, appellant's one-fourth having been given to decedent's daughter-in-law by the provisions of those instruments. *Graves, supra* (202 Cal. 258, 262) makes no mention of "unnaturalness" in its listing of facts tending to show undue influence; instead, as shown above, it declares that there must be a showing that "appellant unduly profited as beneficiary under the will." Recently, in *Estate of Evans,* 274 Cal.App.2d 203 [79 Cal.Rptr. 1], appellant unsuccessfully argued that undue profiting under a will must be equated with the document's unnaturalness; in other words, if the will was not unnatural, appellant-proponent could not have unduly profited thereby. Cited in our resolution of the problem was the following from *Estate of Abert,* 91 Cal.App.2d 50 [204 P.2d 347], in which case the court considered certain statements appearing in *Estate of Teel,* 25 Cal.2d 520 [154 P.2d 384]: "We are persuaded the Supreme Court did not intend by the inclusion of the existence of an *unnatural will* in its recitation of facts in that case to hold that the foregoing rule [shifting the burden of proof to the proponent], so frequently announced in our authorities, was thereby enlarged to also require proof that the will is *unnatural* before the burden shifts so as to require the proponent to affirmatively prove that the will is not the product of his undue influence. All that the court said in the *Teel* case, in that respect, is that when proof of the four named elements appears there is *persuasive evidence of undue influence.*" (Pp. 58-59.) The test, therefore, seems to be whether the proponent unduly profited from the will, and not whether its provisions were unnatural. Cited in *Evans* is *Estate of Trefren,* 86 Cal.App.2d 139 [194 P.2d 574], the reasoning of which can be applied to the present point: "If there had been no will respondent[s] would have received [three-fourths] of said property and *appellant none.* Under such circumstances we do not believe that it can be held that there is no evidence in the record from which a jury would be justified in concluding that appellant . . . unduly profited by the will." (Italics added; p. 149.)

Appellant also discusses the remaining "indicia" of undue influence mentioned in *Lingenfelter,* none of which is assertedly here present.[3] ■ As

---

[3]Such remaining "indicia" are (1) the dispositions of the will were at variance with the decedent's intentions expressed before and after its execution; (2) the relations between the parties afforded the proponent an opportunity to control the testamentary act; (3) decedent's mental and physical condition permitted subversion of her will; and (4) activity by the proponent in procuring the will's execution.

shown in *Estate of Pellegrini,* 138 Cal.App.2d 143, 145 (fn. 1) [291 P.2d 558], however, these are "statements, in varying forms, of the general rule" governing litigation of the type here presented. The well-established exception to such general rule is then pointed out: " 'When proof of the existence of a confidential relationship between the testator and such a beneficiary [one who unduly profits by the will], coupled with activity on the part of the latter in the preparation of the will, is offered, a presumption of undue influence arises therefrom.' [Citations.]" (P. 145.) Accordingly, having already considered the factors of confidential relations and undue profiting, we take up the question of active participation by the appellant in the making of the will. He argues that there was insufficient proof of such activity, asserting that he typed the will at decedent's suggestion only after he was unsuccessful in obtaining an attorney to draft the document. Additionally, he was wholly unacquainted with the two witnesses prior to the time they were asked to serve in such capacity. Too, one of the witnesses indicated his "apparent hostility" to appellant's cause by the inconsistent, if not contradictory, testimony given by him at the trial.

Such argument is specious, but illusory. It is directed more to the *actual* effect of his active participation, which cannot be denied, rather than the *legal* effect thereof. ■ Upon the occurrence of such participation, coupled with the remaining two factors (confidential relations and undue profiting), a presumption of undue influence arose; the burden was then cast upon appellants to show that the will was not procured by the undue influence here asserted. (*Estate of Hall,* 158 Cal.App.2d 466, 474 [322 P.2d 1011].) Not once, significantly enough, is any mention made by apellants in their briefs of this presumption which has been referred to as "a rule of law and a rule of property which cannot be lightly cast aside." (*Estate of Johnson,* 31 Cal.App.2d 251, 257 [87 P.2d 900].) Too, "There would be no need for such a presumption and it would serve no purpose where any supposed influence had accomplished nothing." (*Estate of Harkleroad,* 62 Cal.App.2d 60, 64 [144 P.2d 88].)

■ The above presumption, needless to say, is rebuttable; and it is for the trier of fact to determine whether it has been overcome. (*Estate of White,* 128 Cal.App.2d 659, 669 [276 P.2d 11].) The final question for determination, therefore, is whether there was sufficient proof adduced by appellants to rebut such presumption. As noted earlier, the facts are quite sketchy—the transcript of testimony encompasses only 47 pages. After both sides had rested, the trial court orally announced its decision in this fashion: "All the Court can do in a case like this is bring forth his experience and his background. The Court has an opportunity to observe the witnesses, the demeanor on the stand, and evaluate the testimony accordingly. The Court's judgment is there will be judgment for the contestants as prayed,

namely, the will of August 27, 1968 the Court finds was executed with undue influence therefore it's invalid and the will of December 4, 1963 will prevail. . . ." Implicit in these observations and conclusions is the fact that the trial court chose to disbelieve Peltzer's testimony, either in whole or in relevant part, or accorded it little weight. Among other things, this may have been due to the lack of unqualified corroboration by the subscribing witness. ■ It was appropriately stated in *Estate of Ferris,* 185 Cal.App.2d 731, 734 [8 Cal.Rptr. 553], that " 'Undue influence,' obviously, is not something that can be seen, heard, smelt or felt; its presence can only be established by proof of circumstances from which it may be deduced." Unless it is no longer the law, which is not the case, that the trier of fact is the sole judge of the credibility of witnesses in a will contest (*Estate of Lauth, supra,* 180 Cal.App.2d 313, 317), then this court must sustain the determination below that appellants did not meet the burden of overcoming the presumption of undue influence which arose under the circumstances at bar. The judgment must, therefore, be affirmed.

Judgment affirmed.

Thompson, J., and Gustafson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 24, 1970.