209 Cal.App.3d 1424 (1989)
257 Cal. Rptr. 853
ESTATE OF MARGARET H. LIND, Deceased.
GEORGE M. STEPHENSON, as Special Administrator, etc. Petitioner and Respondent,
v.
WARREN H. HAUGHEY, Contestant and Appellant; RICHARD BILLINGHURST et al., Claimants and Respondents.
Docket No. B034625.
Court of Appeals of California, Second District, Division One.
April 28, 1989.
*1428 COUNSEL
Breidenbach, Swainston, Crispo & Way and Veronica L. Sanchez for Contestant and Appellant.
Stephenson and Stephenson and George M. Stephenson for Petitioner, Claimants and Respondents.
OPINION
SPENCER, P.J. 

INTRODUCTION
Warren H. Haughey appeals from a judgment of dismissal for lack of standing entered after the probate court sustained without leave to amend the demurrer of Richard Billinghurst, Mary Jane Billinghurst and George M. Stephenson to the second amended contest to probate of the purported will of decedent Margaret H. Lind.

STATEMENT OF FACTS
The facts alleged in the second amended contest and grounds of opposition to probate of a purported will (contest) and those reasonably inferable therefrom, which must be accepted as true (Sklar v. Franchise Tax Board (1986) 185 Cal. App.3d 616, 621 [230 Cal. Rptr. 42]), reveal the following: Margaret H. Lind (decedent) died in Los Angeles County on June 3, 1987. On or about June 27, 1987, Attorney George M. Stephenson filed with a petition for probate the purported will of the decedent, dated September 14, 1984.
*1429 Appellant is the "brother" of the decedent. He was the "foster child" of Robert Lincoln and Henrietta Haughey (Haugheys), the decedent's parents. Appellant resided with the Haugheys from shortly after his birth until he entered military service in 1942, at the age of 22. The Haugheys provided appellant with all the necessities of life and treated him as their natural child. Appellant's relationship with the Haugheys continued throughout their joint lifetimes, with the Haugheys always referring to him as their son.
Appellant would have been adopted by the Haugheys but for a legal barrier. As set forth in a 1982 affidavit by the decedent, the Haugheys "had some adoption papers made out" around the time appellant was drafted into the Army.
On or about May 12, 1942, the Haugheys attempted to change appellant's birth certificate to read "Warren Harding Haughey." Without supplying a reason, the State Registrar of Vital Statistics refused to make the change. In that appellant was always known by that name and as the son of the Haugheys, there was no reason to press the issue.
Appellant always believed himself to have been adopted, and, when he discovered in 1980 that adoption proceedings had never been completed, it was too late to take any legal action. The Haugheys were both deceased.
The decedent left as her surviving heir or possible heir, in addition to appellant, Jerry Haughey, the 62-year-old stepson of her deceased brother Robert P. Haughey. However, the purported will of September 14, 1984, named as devisees and legatees only Richard and Mary Jane Billinghurst, identified in the purported will as "my friends," and Attorney George M. Stephenson (respondents).
This purported will was the direct result of undue influence exercised over the decedent by Attorney Stephenson. When the decedent signed the purported will, she was 88 years old and suffering from multiple ailments, which gradually deteriorated both her mind and body. She was under the constant care of a physician. Her mental and physical condition caused her freedom of will to be easily subverted by those in whom she had confidence.
The decedent had placed trust and confidence in her attorney, with whom she enjoyed a friendly and confidential relationship. Attorney Stephenson used that relationship to control and influence her mind and actions and to cause her to execute the purported will. Her poor health and lack of business ability left her unable to resist her attorney's undue influence.

*1430 CONTENTION
(1a) Appellant contends the second amended contest alleges sufficient ultimate facts to establish, prima facie, his standing to contest probate of decedent's purported will and the probate court thus erred in sustaining respondents' demurrer without leave to amend, rather than conducting an evidentiary hearing on the disputed issue of standing. For the reasons set forth below, we agree.

DISCUSSION
(2) On an appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend, the reviewing court must accept as true not only all facts alleged in the complaint (here the contest) but also "`facts that may be implied or inferred from those expressly alleged.'" (Sklar v. Franchise Tax Board, supra, 185 Cal. App.3d at p. 621, citing Kiseskey v. Carpenters' Trust for So. California (1983) 144 Cal. App.3d 222, 228 [192 Cal. Rptr. 492]; accord, Glaire v. La Lanne-Paris Health Spa, Inc. (1974) 12 Cal.3d 915, 918 [117 Cal. Rptr. 541, 528 P.2d 357].) The contestant's ability to prove those allegations is not the concern of the reviewing court. (Buckaloo v. Johnson (1975) 14 Cal.3d 815, 828 [122 Cal. Rptr. 745, 537 P.2d 865].)
Appellant contests the purported will of decedent on the ground of undue influence. (Prob. Code, § 371.)[1] (3) The challenge arises from the bequest in the will of one-half of the entire estate to Attorney Stephenson, who prepared the will. Given the confidential relationship of attorney and testatrix, such a bequest invites invocation of the evidentiary presumption of undue influence, shifting the burden to the attorney, who is also named in the will as executor, to show he did not unduly influence his elderly client. (See, e.g., Estate of Witt (1926) 198 Cal. 407, 419 [245 P. 197]; Estate of Straisinger (1967) 247 Cal. App.2d 574, 585 [55 Cal. Rptr. 750]; Estate of Leonard (1949) 92 Cal. App.2d 420, 429 [207 P.2d 66].) Undue influence is adequately pleaded in the contest. (3 Koontz, Cal. Decedent Estate Practice (Cont.Ed.Bar 1988 Rev.) §§ 22.125, 22.126, pp. 22-78, 22-81.)
To contest a will before or after probate, the would-be contestant must be an "interested person." (§§ 370, 380.) (4) "The courts do not favor will contests." (3 Koontz, op. cit. supra, § 22.4, p. 22-8.) (5a) Accordingly, the courts have long and steadfastly limited the right to contest the probate of a will to those who have "`such a pecuniary interest in the devolution of the testator's estate, as would be impaired or defeated by the probate of a *1431 will or be benefited by the setting aside of the will.' [Citations.]" (Estate of Molera (1972) 23 Cal. App.3d 993, 998 [100 Cal. Rptr. 696].)
In the seminal case of Estate of Land (1913) 166 Cal. 538 [137 P. 246], the California Supreme Court noted "`the statute contemplates a legal interest and not merely a grievance to the feelings of propriety or sense of justice.'" (At p. 543.) (6) The purpose of restricting who may contest probate is to avoid "delaying the settlement of the estate." (Estate of Plaut (1945) 27 Cal.2d 424, 429 [164 P.2d 765, 162 A.L.R. 837].)
(7a) As "only an interested person may properly be a contestant" (Estate of Powers (1979) 91 Cal. App.3d 715, 719 [154 Cal. Rptr. 366], italics in original), appellant must allege his standing as an interested person. (5b) That is, he must allege he would take under another will or by intestacy in the event of a successful contest to the purported will. (Id., at p. 720.)
(1b) The purported will contains no residuary clause. Therefore, if it were held partly invalid, as in the disallowance of the allegedly tainted bequest to Attorney Stephenson,[2] then half of the decedent's estate would pass by intestacy. (§§ 6400, 6401.) As the decedent died a widow without issue and was predeceased by her parents, next in line would be the issue of the decedent's parents. Her brother Robert and sister Isabel also predeceased her. Thus, if appellant can show he had a relationship of child and parents with the decedent's parents, he would take. (§ 6402, subd. (c).)
The Legislature enacted Probate Code section 6408 in 1983 and then amended it in each of the next two years. It applies to estates of persons dying after January 1, 1985. Here, the decedent died on June 3, 1987. Section 6408 defines the relationship of parent and child "for the purpose of determining intestate succession." Subdivision (a)(2) declares "[t]he relationship of parent and child exists between an adopted person and his or her adopting parent or parents."
Subdivision (b) provides, "For the purpose of determining intestate succession by a person or his or her descendants from or through a foster parent or stepparent, the relationship of parent and child exists between that person and his or her foster parent or stepparent if (1) the relationship began during the person's minority and continued throughout the parties' joint lifetimes and (2) it is established by clear and convincing evidence that the foster parent or stepparent would have adopted the person but for a legal barrier."
*1432 Appellant claims to have been adopted, but can show no official documentary evidence to support his claim. Indeed, he concedes that the State Registrar of Vital Statistics refused to issue a birth certificate showing his adopted surname. In the alternative, he claims a parent-child relationship with the decedent's parents under section 6408, subdivision (b).
As the evidence offered in support of appellant's adoption also goes to the crucial question of whether his foster parents, the Haugheys, decedent's natural parents, "would have adopted [him] but for a legal barrier," we can review the two asserted bases for standing together.
It is undisputed that appellant was taken into the home of the elder Haugheys shortly after his birth, thus beginning the relationship during his minority. Respondents further concede the relationship continued throughout the joint lives of appellant and his foster parents. The nature of the relationship is not in question. (See Estate of Claffey (1989) 209 Cal. App.3d 254, 257, 259 [257 Cal. Rptr. 197] [holding the relationship contemplated in the statute must be a "family relationship"; the existence of a legal barrier to adoption was clear, but "there was no clear and convincing evidence [the decedent] would have adopted [the contestants] but for that barrier"].)
We are left with the questions of whether the Haugheys would have adopted appellant but for a legal barrier and, more particularly, whether the second amended contest alleges sufficient ultimate facts necessary to plead the fulfillment of that requirement. The resolution of these questions turns on both the contents of the pleading and additional facts appellant presented to the probate court.
We turn first to whether appellant would have been adopted but for a legal barrier. Appellant specifically alleges (1) he "would have been adopted but for a legal barrier"; (2) about the time he was drafted into the United States Army, "the Haugheys had some adoption papers made out"; and (3) he "always believed himself to have been adopted."
Appellant offered evidence to support these allegations in his opposition to respondent's demurrer and motion to strike. Three pieces of evidence merit discussion. The first is a letter from the decedent's sister, Isabel, to her brother, Robert, dated January 15, 1942. The letter reads in pertinent part: "Warren is now deferred to Apr. 15  Teeth  Then I have completed with the aid and interference of our various friends his birth and citizenship papers and he is now really Warren Harding Haughey. Never do I want that to do over. It has been 4 months but it is only a matter of record now  settled by Judge Falk. He really did not have a name untill [sic] now. *1433 Father's name is Myron Forbes, a salesman  49 years old  Mother's name Thompson."
In the opposition to respondents' demurrer and motion to strike, appellant's attorney explained, "The contestant, with the aid of an investigator, has made a thorough search through the records and archives of Judge Falk's files in Eureka and has been unable to turn up anything more definite as to what proceedings were actually started."
The second item is a letter of February 16, 1943, again from Isabel to her brother. She refers to one rare trip away from her home in Eureka of "just eight days to Salt Lake City to see one of the finest men I know that is your adopted brother Warren H. Haughey to you and a Pvt. as was your grandfather in the Civil War." The word "adopted" is underlined on the copy of the letter in the record, but it is unclear from that copy whether the underlining was made by the writer or added later.
The third piece of evidence is a sworn affidavit executed by the decedent herself, dated March 23, 1982, and notarized by Attorney Stephenson.[3] In the affidavit, the decedent recounts appellant's relationship with her parents. The fourth paragraph reads, "I am aware of the fact that when Warren H. Haughey was drafted by the United States Army in 1940 or thereabouts that my mother and father had some adoption papers made out  however, I do not know whether that was anything other than an affidavit or a court adoption."
We now turn to the ultimate question. Is the evidence presented above enough for the probate court to have inferred sufficient ultimate facts to carry the contestant beyond the pleading stage and into court?
Probate Code section 6408, subdivision (b)(2) requires two elements be proved or, in this instance, pleaded: (1) the foster or stepparent "would have adopted" the person (2) "but for a legal barrier." Evidence Code section 1311 permits, as an exception to the hearsay rule, the use of statements of family history to prove the truth of the matters asserted. From the three pieces of unrefuted evidence in the record, the probate court could infer, at least, an attempt or attempts at adoption, which could be taken by the court as showing the elder Haugheys "would have adopted" appellant.
*1434 Respondents rely heavily upon appellant's failure to state what legal barrier prevented his adoption. If the foregoing is sufficient to infer an attempt was made to adopt appellant at approximately the time of his entry into the Army in 1942, the law would supply the legal barrier. Appellant was born on April 12, 1920. He would have become a legal adult on his 21st birthday, April 12, 1941. Any attempt to adopt him in 1942 would have met an insurmountable legal barrier, in that California law refused to permit adult adoptions prior to 1951. (6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, § 180, p. 4691.)

GUIDANCE FOR THE COURTS
Inasmuch as this is a case of first impression regarding a statute, we deem it appropriate to offer guidance to the probate court in this case and for other such courts in the future. We touch upon the questions of what must be pleaded in a will contest to allege standing under section 6408, subdivision (b), how the court should resolve disputes as to such standing, and what meaning should be given to the phrases "would have adopted" and "but for a legal barrier."

Sufficiency of the pleading
(8) It is well established that a contestant should plead ultimate facts, rather than evidentiary facts or conclusions of law. (3 Koontz, op. cit. supra, § 22.125, pp. XX-XX-XX-XX; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 396, p. 5854; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 332, 346-347, pp. 382-383, 398-400.) However, the distinctions among ultimate facts, evidentiary facts, and conclusions of law are, at best, blurred. (4 Witkin, Cal. Procedure, op. cit. supra, § 332, pp. 382-383; see Estate of Bixler (1924) 194 Cal. 585 [lengthy discussion on pleading ultimate facts in a will contest, showing just how unclear the distinctions are].) (9) As California code pleading has moved toward federal notice pleading, the important thing is that the proponent be informed of the contestant's claim to standing. (Cf. 4 Witkin, Cal. Procedure, op. cit. supra, § 333, p. 384.) To allege that "contestant's foster parents would have adopted him but for a legal barrier" is sufficient for purposes of information. That is an allegation of ultimate fact. To allege how it is known would be to plead evidentiary facts.

Resolving disputes as to standing
(10) If the proponents wish to challenge the contestant's standing, there is a long-established procedure available to the court: to hold an evidentiary hearing upon the standing question before proceeding with the trial of the contest. (Estate of Plaut, supra, 27 Cal.2d at p. 426; Estate of Land, supra, *1435 166 Cal. at p. 540; Estate of Powers, supra, 91 Cal. App.3d at pp. 719, 723; Estate of Lane (1970) 7 Cal. App.3d 402, 405 [86 Cal. Rptr. 620].) The contestant bears the burden of proof on the issue. (Estate of Land, supra, at p. 542; Estate of Powers, supra, at p. 723; Estate of Lane, supra, at p. 405.) Minimal delay and minimal discovery limited to the standing question should precede such a hearing. If the contestant fails to establish standing, the contest should be dismissed. (Estate of Plaut, supra, at p. 429; Estate of Land, supra, at pp. 540-541.)
(7b) Contestants must allege the basis of their standing in their contests. (11) Frivolous claims to standing are unlikely to be frequently made, and the court is empowered to deal with "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay" under Code of Civil Procedure section 128.5.
(12) This procedure would be in keeping with the words of Justice Traynor, who wrote in Estate of Plaut, supra: "Although the right to ask the court for an adjudication of his claim to the estate should be denied a person whose interest `has not even the appearance of validity or substance' [citation], it should not be denied a person who, even though he may ultimately not receive any part of the estate, has at least established a prima facie interest in that estate. Since a proceeding to probate or contest a will is a proceeding in rem [citation], and at the end of the six-month period [now 120 days] during which it may be contested the probate of the will is conclusive [citations], all persons whose interests may be adversely affected should be given an opportunity to be heard." (27 Cal.2d at pp. 428-429.) In that same opinion, Justice Traynor recognized with approval that the probate court could hold a hearing on the standing question before proceeding with the trial of the contest (id., at p. 426) and the contest should be dismissed if the contestant cannot make a prima facie showing of standing (id., at p. 429).
(13) The doctrine of the liberal construction of pleadings should be employed here to aid the contestant. (4 Witkin, Cal. Procedure, supra, § 396, pp. 446-447.) Liberal allowances for pleading are especially appropriate where upholding a weak pleading will "avoid a possible gross miscarriage of justice." (Id., § 401, p. 450.) Allowing an attorney without challenge to write himself into an elderly client's will as a major beneficiary and executor is a possible gross miscarriage of justice.

The meaning of section 6408, subdivision (b)(2)
It is neither necessary nor would it be proper for us to attempt a definitive listing of possible ways contestants could prove they "would have [been] *1436 adopted." (14) However, in the context of the instant case, we note that clear and convincing evidence of an attempt at adoption could be taken by a probate court as proof of the "would have adopted" element of section 6408, subdivision (b)(2). Nothing here should preclude other proofs, such as statements of intent by the foster or stepparents.[4]
(15a) If an attempt to legally adopt was made, it can be inferred it failed because of a legal barrier, absent evidence the attempt was aborted for nonlegal reasons (such as a change of heart, lack of funds, or mere lethargy), provided a definite legal barrier can be shown to have existed at the time of the attempted adoption. (1c) If appellant is able to demonstrate to the court by clear and convincing evidence that the elder Haugheys would have adopted him in 1942, the state's prohibition of adult adoptions at that time would constitute a sufficient legal barrier to the adoption.
(15b) A search of reported California appellate court decisions yields only 19 opinions that have employed the term "legal barrier." From them it is clear the phrase is not a term of art and carries no meaning beyond the plain meaning of the words. Therefore, "legal barrier" should be interpreted broadly in the spirit of the policy that calls for a liberal interpretation of adoption laws in the best interests of the adopted person. (6 Witkin, Summary of Cal. Law, supra, Parent and Child, § 183, p. 4693.)
(1d) We hold appellant has alleged sufficient ultimate facts to make it clear what his basis is for claiming standing to contest probate of the purported will of the decedent. The probate court accordingly erred in sustaining respondents' demurrer. (16) (See fn. 5.), (1e) Appellant should be granted an opportunity to present evidence to support his disputed claim of standing.[5]
(17) In an evidentiary hearing, appellant might or might not be able to prove his standing to contest the decedent's will; however, his failure to prove standing would not necessarily leave the alleged undue influence of Attorney Stephenson unchallenged. As it is plain that Attorney Stephenson drafted the will in which he is named as executor and as a major beneficiary, the probate court may upon its own motion raise the presumption of undue influence and require Stephenson to rebut the presumption. (3 Koontz, op. *1437 cit. supra, § 22.52, p. 22-29; see, e.g., Estate of Harkleroad (1943) 62 Cal. App.2d 60, 61 [144 P.2d 88].) In such cases of possible abuse of the confidential relationship by attorneys, the probate court should raise the presumption sua sponte. Such exercises of undue influence by attorneys are especially egregious and thus require the closest scrutiny. (See, e.g., Estate of Witt, supra, 198 Cal. at p. 419; 3 Koontz, op. cit. supra, § 22.44, p. 22-26.)
The judgment of dismissal is reversed, and the probate court is ordered to vacate its order sustaining the demurrer and instead to enter an order overruling the demurrer, thereby entitling appellant to an evidentiary hearing on the question of his standing to contest probate of the purported will. Appellant is to recover costs on appeal.
Hanson, J., and Devich, J., concurred.
The petition of claimants and respondents for review by the Supreme Court was denied July 13, 1989.
NOTES
[1] All statutory references hereafter are to the Probate Code, unless otherwise indicated.
[2] No challenge has been raised to the bequest of the other half of the estate to "my friends" Richard and Mary Jane Billinghurst.
[3] The record does not reveal the purpose of the affidavit, but, as the decedent executed it just three weeks before appellant's 62nd birthday and as the record contains references to appellant's inability to obtain a birth certificate from the State Registrar of Vital Statistics showing his name as Haughey, appellant might well have sought the affidavit as proof of age in applying for Social Security benefits.
[4] See Estate of Claffey, supra, 209 Cal. App.3d 254, for discussion of the requirements of section 6408, subdivision (b)(2).
[5] Appellant also attempts to invoke the judicial doctrine of equitable adoption. Suffice it to say the question is inappropriate here, for, even if appellant could show the Haugheys had equitably adopted him, he would, by that doctrine, have been entitled only to inherit from his equitable parents on the contract theory underlying the doctrine, not through them from the decedent. On equitable adoption and its limitations, see Estate of Wilson (1980) 111 Cal. App.3d 242 [168 Cal. Rptr. 533].