[No. B072638. Second Dist., Div. Five. Aug. 23, 1993.]

ESTATE of JAMES CLEVELAND, Deceased.
ANDRE CLEVELAND, Petitioner and Appellant, v.
ANNETTE MAY THOMAS, as Trustee, etc., Objector and Respondent.

## COUNSEL

Howard S. Klein, Moffitt, Weagant & Loo, Lance M. Weagant, Fowler & Lasman and Randall D. Fowler for Petitioner and Appellant.

Ross & Sacks, Bruce S. Ross, Robert N. Sacks and Terrence M. Franklin for Objector and Respondent.

## OPINION

GRIGNON, J.—On February 9, 1991, James Cleveland (decedent) died intestate. This appeal concerns whether appellant Andre Cleveland is entitled to a share of decedent's estate. Appellant filed two petitions in probate court which sought to order respondent Annette May Thomas, trustee of the James Cleveland Trust, to convey certain real and personal property to the personal representative of decedent's estate. Respondent brought a successful motion for summary judgment on the ground that appellant was not an "interested person" and therefore lacked standing to file the petitions. Appellant contends that he is an interested person pursuant to Probate Code section 6408, subdivision (e).[1] Section 6408, subdivision (e) provides that a foster child or stepchild in a continuous parent-child relationship with a decedent may share in the decedent's estate where clear and convincing evidence establishes that the decedent would have adopted the foster child or stepchild but for a legal impediment to the adoption. We conclude that no legal impediment to

---

[1]All further references are to the Probate Code unless otherwise noted.

appellant's adoption by decedent existed as a matter of law and affirm the judgment of the probate court.

### FACTS AND PROCEDURAL BACKGROUND

On November 6, 1991, appellant filed an amended petition for an order authorizing and directing the conveyance and transfer of trust real property to decedent's estate. On that same day, appellant filed an identical petition for an order authorizing and directing the conveyance and transfer of trust personal property to decedent's estate. Appellant alleged in both petitions that he was entitled to share in decedent's estate pursuant to the authority of section 6408, subdivision (e).

The petitions alleged that decedent had been in a coma for 24 hours prior to his death. During the period in which decedent had been in a coma, respondent had signed two documents pursuant to a 1986 durable power of attorney: "The James Cleveland Trust," and the "Declaration of Trust and Agreement for the Reverend James Cleveland Charitable Foundation" (collectively, the Trust).[2] At the time of the petitions, respondent, as trustee of the Trust, claimed title and possession to the property described in the Trust. The Trust provides for the creation of a charitable foundation, and also instructs the trustee to make specific testamentary bequests to a variety of individuals, including decedent's daughter,[3] sisters and their children, godson, various friends, and respondent. The Trust documents also make a specific gift of $10,000 to appellant[4] who is described as decedent's "friend and godson."

Respondent answered the petitions on February 27, 1992. Respondent alleged that appellant's true name is Andre McIsaac, not Andre Cleveland. She contended that appellant lacked standing to bring the petitions since he had no beneficial interest in decedent's estate.

On March 27, 1992, respondent filed a motion for summary judgment contending that appellant did not meet the requirements of section 6408, subdivision (e).[5] Respondent maintained that appellant, 35 years old as of the date of the motion for summary judgment, had reached the age of majority 16 years prior to decedent's death. Appellant is the son of Esther McIsaac, who moved to Los Angeles in 1968, where she met decedent. Appellant and his mother resided in decedent's home for 12 years, when appellant was between 12 and 24 years of age. Appellant received some

---

[2] The Trust documents are attached to the petitions and appear to have been executed by respondent as "attorney-in-fact" for decedent under the durable power of attorney.

[3] Decedent's daughter is gifted with $100,000.

[4] The Trust identifies appellant as Andre McIsaac, not Andre Cleveland.

[5] Respondent also maintained that the statute should not be applied retroactively and it was unconstitutional as both vague and not rationally related to a permissible state purpose. These issues were not reached by the trial court.

support from decedent and was claimed by decedent as a dependent on his income tax returns. The record does not demonstrate that decedent and Esther McIsaac were ever married, and appellant conceded at oral argument that no marriage took place. According to a declaration filed by Esther McIsaac earlier in the probate proceeding, decedent had asked her if he could adopt appellant, but she had refused. She feared it would damage her relationship with appellant, wanted appellant to retain her name, and felt she could financially support him.

The material facts are not in dispute. Respondent contended that the legal barrier to appellant's adoption was removed when appellant reached the age of legal majority on November 12, 1974, since his mother's consent was no longer required to effectuate the adoption. However, 16 years elapsed in which decedent took no steps to adopt appellant.

A hearing on the motion was held on June 17, 1992, and the probate court granted the motion in a written statement of decision on September 21, 1992. The probate court found that no triable issue of fact existed as to whether decedent would have adopted appellant "but for" a legal barrier, since that legal barrier had been removed when appellant reached the age of majority. Appellant was found to lack standing to prosecute claims under the Probate Code, since he had no rights of inheritance. On September 21, 1992, appellant's petitions were denied and judgment was entered on September 28, 1992. This timely appeal followed.

## DISCUSSION

Prior to 1985, a stepchild or foster child had no right to inherit by intestate succession. (*Estate of Claffey* (1989) 209 Cal.App.3d 254, 256 [257 Cal.Rptr. 197]; see former § 26, which excluded from the definition of "child" any person who "is only a stepchild, a foster child, a grandchild, or any more remote descendant.") On January 1, 1985, a general revision of much of the Probate Code took effect. (*Estate of Claffey, supra.*) One of the provisions added to the Probate Code was section 6408, subdivision (e).[6]

Section 6408, subdivision (e) permits a stepchild or foster child to inherit by intestate succession if certain conditions are met. Section 6408,

---

[6]*Estate of Claffey* stated that section 6408, subdivision (e) was taken from the Uniform Probate Code. In fact, the Uniform Probate Code contains no such provision and the official comment to subdivision (e) (subdivision (a)(2) when enacted) recites that it is new and not found in the Uniform Probate Code. Other portions of section 6408 track the language of Uniform Probate Code section 2-109. (8 West's U. Laws Ann. (1983) U. Prob. Code, § 2-109, p. 66, currently § 2-114 (1993 pocket pt.) p. 85.) The Uniform Probate Code expressly excludes stepchildren and foster children from the definition of "child" as in parent-child relationship for intestacy purposes. (8 West's U. Laws Ann. (1993 pocket pt.) U. Prob. Code,

subdivision (e) provides, "For the purpose of determining intestate succession by a person or his or her descendants from or through a foster parent or stepparent, the relationship of parent and child exists between that person and his or her foster parent or stepparent if (1) the relationship began during the person's minority and continued through the parties' joint lifetimes and (2) it is established by clear and convincing evidence that the foster parent or stepparent would have adopted the person but for a legal barrier."

The legislative history of section 6408, subdivision (e) was described in *Estate of Claffey, supra,* 209 Cal.App.3d at page 258: "Section 6408, a part of the revision of the statutes relating to wills and intestate succession, was drafted by and proposed to the Legislature by the California Law Revision Commission. The initial presentation contained no reference to stepchildren except as they were officially adopted by the stepparent. Comment to the section stated, 'A person who is only a stepchild . . . is not a child.' A later recommendation by the commission's probate consultant suggested the addition of what would become subdivision (a)(3)[, later section 6408, subdivision (e)[7]]. The consultant noted, under the proposed addition, provision would be made 'for step- and foster children *in very limited situations,* with the necessary safeguards incorporated by treating the case like an adoption . . . .' (Italics added.) The proposal was accepted at the next revision committee meeting." (See also Tent. Recommendation Relating to Wills and Intestate Succession (Nov. 1982) Cal. Law Revision Com. com., West's Ann. Prob. Code (1991) § 6408, p. 513, which does not include the provision at issue and which excludes from the definition of "child" at § 26, "foster child[ren]" and "stepchild[ren].") The Law Revision Comment on section 6408 notes, "[s]ubdivision (e) applies, for example, where a foster child or stepchild is not adopted because a parent of the child refuses to consent to the adoption." (Law Revision Com. com., following West's Ann. Prob. Code, § 6408 (1990 Enactment), at p. 513.)

This provision was one of many revisions to the Probate Code recommended by the Law Revision Commission in 1982. The introduction to the Commission's Tentative Recommendation discussed the changing shape of families in California and the need for the Probate Code to reflect such changes. "There have been many changes in the American family and in public attitudes since the last major revision of the California Probate Code in 1872. There are more divorces and a greater likelihood that decedents will leave separate property in their estates; more decedents have had plural

---

§ 1-201, subd. (5), p. 8.) Our research has revealed no other American jurisdiction which recognizes the rule embodied in section 6408, subdivision (e).

[7]The *Claffey* court was apparently referring to what would become section 6408, subdivision (a)(2) not (a)(3). (Stats. 1983, ch. 842, § 21, p. 3083.)

families and leave adopted children, stepchildren, children born out of wedlock, and relatives of the half-blood; more decedents die with inherited property in their estates; more decedents have moved to California with property acquired elsewhere. As a result, the California Probate Code is overdue for a comprehensive revision." (16 Cal. Law Revision Com. Rep. (1982) p. 2318.)

■ The fundamental purpose of the proposed changes was to modify the rules of intestate succession in order to "conform to what the testator probably would have wanted if he or she had made a will." (16 Cal. Law Revision Com. Rep. (1982) p. 2318.) The proposed law, drawn in large part from the Uniform Probate Code, was intended to "make probate more efficient and expeditious" and to "provide rules that are more likely to carry out the intent of the testator or, if a person dies without a will, the intent a decedent without a will is most likely to have had." (*Id.* at p. 2319.) The Assembly Concurrence in the Senate Amendments to Assembly Bill No. 25 as amended July 8, 1983, and prepared by the Office of Research also notes that, "[t]his bill is the California Law Revision Commission's proposal to comprehensively revise the law governing wills and intestate succession. The sponsor states that the changes make the law consistent with the testator's intentions and make the administration of intestate succession simpler. The expected results would be a reduction of costs and delays in probate." The Senate Committee on Judiciary Background Information on Assembly Bill No. 25 describes the purpose of the bill as, "[t]o simplify administration of an intestate estate and to more effectively carry out the intent of a decedent who dies leaving a will."

Once the antecedent provision to section 6408, subdivision (e) was added to the proposed revisions, its purpose was described as follows, "[the provision g]ives a foster child and a stepchild the same status as an adopted child if the family relationship began during the child's minority, continued through the parties' joint lifetimes, and it is established by clear and convincing evidence that the foster parent or stepparent would have adopted the child but for a legal barrier." (Elihu Harris, Chairman of the Assem. Com. on Judiciary and prepared by the consultant for the Com., Dig., Assem. Bill No. 25 as amended on Apr. 20, 1983.) The analysis prepared by the Senate Committee on Judiciary on Assembly Bill No. 25 as amended June 15, 1983, likewise reports that the bill "would also create in a foster child and a stepchild the same inheritance rights as in an adopted child" if the statutory conditions are met.

■ "Section 6408 permits a child to inherit from a stepparent if four requirements are met.[1] First, the parent-child relationship must begin during

the child's minority. Second, the parent-child relationship must continue throughout the parties' joint lifetimes. Third, it must be established by clear and convincing evidence that the stepparent would have adopted the person. Fourth, it must be established by clear and convincing evidence that the stepparent would have adopted the person *but for a legal barrier.* (§ 6408, subd. (e); see also *Estate of Lind* (1989) 209 Cal.App.3d 1424, 1433 [].)" (*Estate of Stevenson* (1992) 11 Cal.App.4th 852, 859 [14 Cal.Rptr.2d 250], italics in original.)

■ Adoption results in a complete substitution of parents, as opposed to a guardianship, for example, which only suspends the rights of parents. Adoption extinguishes the rights of natural parents forever.[8] (10 Witkin, Summary of Cal. Law (8th ed. 1989) Parent and Child, § 342, p. 389.) "A child, when adopted, may take the family name of the person adopting. After the adoption, the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relationship." (Civ. Code, § 221.74.)

■ The precise issue presented by this case is whether the fourth element of section 6408, subdivision (e)—the legal barrier which prevented the adoption—must exist only at the time of the attempted adoption, or must continue to the time of death of the decedent.[9] This same issue has been recently addressed by the Sixth District in *Estate of Stevenson, supra,* 11 Cal.App.4th 852. In that case, the two claimants to the decedent's estate were born in 1950 and 1951. The claimants and their natural father lived off and on with decedent during their childhood, including a period during which their natural father served in Vietnam and they were cared for solely by decedent. Before leaving for Vietnam in 1967, claimants' natural father telephoned their natural mother and asked for permission for decedent to adopt the two children. Their natural mother refused. Decedent died in 1990. The trial court found that they were entitled to share in decedent's estate under section 6408.

---

[8]There are some narrow exceptions to this general rule. (See, e.g., § 6408, subd. (b); Sen. Bill No. 970, eff. Jan. 1, 1994 [to amend §§ 9300 and 9306 of the new Family Code, eff. Jan. 1, 1994].)

[9]Although at first blush, the statutory construction of section 6408, subdivision (e) may not appear to have broad effect, the opposite is true. The Probate Code provision at issue has wider reach than intestacy proceedings involving stepchildren or foster children. First, even where decedent leaves a will or testamentary trust, such instruments may be invalidated in whole or in part and some or all of the decedent's property will pass by intestacy. More importantly, the laws of intestate succession govern the interpretation of provisions of such written instruments where beneficiaries are not named. (§ 6152.) This is the case where a class gift to "issue," "heirs" or "children" is made, especially to future generations or where the court must determine the construction of a future interest provision, such as a reverter or remainder.

The Sixth District affirmed. One of the issues presented was whether the purported heirs had established that they would have been adopted by decedent "but for" a legal impediment. That impediment was removed when they reached the age of legal majority in 1968 and 1969—21 and 22 years prior to decedent's death in 1990. The Sixth District concluded that the legal barrier need not exist continuously until the time of death. Three reasons were given: "First, once the child reaches adulthood, the parties may decide that adopting the child is not so important. [¶] Second, appellants' interpretation would mean the statute would not apply to adult stepchildren. . . . Given that the legal barrier is usually the natural parent's refusal to consent to the adoption, it would not make sense to require that the legal barrier exist until the stepparent dies.[10] If such a requirement were imposed, then section 6408 would only apply when the stepson or stepdaughter is a minor. . . . [¶] Finally, the fact that section 6408, subdivision (e), refers to a relationship lasting 'throughout the parties' joint lifetimes' suggests that the statute was meant to apply even after the child reached adulthood." (*Estate of Stevenson, supra*, 11 Cal.App.4th at p. 866.)

The Sixth District in *Stevenson, supra*, 11 Cal.App.4th 852, relied in part on dictum in the case of *Estate of Lind* (1989) 209 Cal.App.3d 1424, 1436 [257 Cal.Rptr. 853], that a legal barrier to adoption should be presumed in the absence of evidence of other reasons for the aborted adoption. "If an attempt to legally adopt was made, *it can be inferred it failed because of a legal barrier*, absent evidence the attempt was aborted for nonlegal reasons (such as a change of heart, lack of funds, or mere lethargy), provided a definite legal barrier can be shown to have existed at the time of the attempted adoption." (Italics added.) *Lind* was a will contest in which the claimant contended that he was the "brother" of decedent and the "foster child" of decedent's parents. The *Lind* claimant was raised from birth as the child of decedent's parents and believed himself to have been adopted by them. In addition, claimant's "foster" parents did, in fact, attempt to legally adopt him, and the Secretary of State refused to issue a revised birth certificate. By the time claimant discovered the problem, his foster parents were deceased. At the time of trial, the nature of the "legal barrier" to the adoption was unknown. *Lind* was an appeal from a judgment of dismissal following a demurrer to the will contest for lack of standing. As such, the only issue presented was whether sufficient facts were pled which

---

[10]A minor over the age of 12 must also consent to his or her own adoption (Civ. Code, § 221.13), and the adopting person's spouse must consent to adopt the minor (*id.* at § 221.14). Legal barriers to an adult adoption would include failure to consent by the adopting person's spouse, the adoptee's spouse, or the adoptee. (*Id.* at § 230.20, subd. (a).) In addition, only one adult adoption of unrelated persons per year may be effected (*id.* at § 230.12.), and all adult adoptions must be "for the best interests of the parties and in the public interest." (*Id.* at § 230.20, subd. (c).) These sections have been renumbered and will appear at section 8500 et seq. of the new Family Code, effective January 1, 1994. (Stats. 1992, ch. 162, § 10.)

demonstrated a legal barrier to the claimant's adoption. The issue of the required duration of the barrier was not present and *Lind* casts no light on the case at bar.

*Stevenson* also relied upon *Lind*'s recitation of the rule favoring liberal interpretation of adoption laws to favor adopted persons. Such a rule may have a place in cases such as *Lind*, where adoption papers were actually filed. In the instant case, no such attempt at an adoption is alleged. Thus, no "adopted person's" rights are implicated. *Stevenson* extended the presumption in favor of a stepchild where *no* formal attempt at adoption was made. In this case, the relationship is even more attenuated—that of "foster child"—and we find it inappropriate to apply such a rule of construction intended to aid adoptees.

This court is not bound by the *Stevenson* decision, a decision of another district, (*L.A. Police Protective League* v. *City of Los Angeles* (1985) 163 Cal.App.3d 1141, 1147 [209 Cal.Rptr. 890]), and we decline to follow it. Our primary responsibility here is to correctly interpret the statutory language. (*Estate of Claffey, supra,* 209 Cal.App.3d at p. 258.) "In so doing, we must ascertain the intent of the Legislature. (Code Civ. Proc., § 1859; *Sher* v. *Leiderman* (1986) 181 Cal.App.3d 867, 881 [].) We must be careful 'not to insert what has been omitted, or to omit what has been inserted.' (Code Civ. Proc., § 1858.) 'The judiciary has no power to rewrite plain statutory language.' (*Hyland Therapeutics* v. *Superior Court* (1985) 175 Cal.App.3d 509, 514 [].) 'When the meaning is plain, we apply it.' (*Greyhound Lines, Inc.* v. *County of Santa Clara* (1986) 187 Cal.App.3d 480, 487 [].)" (*Estate of Stevenson, supra,* 11 Cal.App.4th at p. 860.) The most important indicator of legislative intent is the language of the statute. (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268 [284 Cal.Rptr. 718, 814 P.2d 704].) However, the language of the statute "must be construed in context, keeping in mind the statutory purpose. . . ." (*Ibid.*) Statutory purpose or legislative intent may be ascertained by taking into consideration both the legislative history and the broader historical circumstances of enactment of the statute. (*Ibid.*) In our view, the *Stevenson* court ignored the plain meaning of the statute and rewrote the statute to coincide with its view of the legislative history.

The term "but for" as found in section 6408 subdivision (e) is plain and unequivocal in its meaning. Under the statute, the failure to adopt an individual may be attributed to a legal impediment only if the legal impediment is the actual cause or the cause in fact of the failure to adopt. (See *Mitchell* v. *Gonzales* (1991) 54 Cal.3d 1041, 1049 [1 Cal.Rptr.2d 913, 819

P.2d 872].) The legal impediment must be the "sine qua non" of the failure to adopt. (See *Ibid.*) The test is whether the adoption would have occurred "but for" the legal impediment.

Section 6408 defines the meaning of "parent-child" relationship for purposes of determining intestate succession. The purpose of the 1985 addition to section 6408 was to provide that a stepchild or foster child could inherit by intestate succession "in very limited situations, with the necessary safeguards incorporated by treating the case like an adoption." Thus, in determining who is a "child" of the intestate, the Legislature included, in addition to those children born to or adopted by a decedent, any stepchild or foster child engaged in a lifetime relationship with the decedent who would have been formally adopted by the decedent "but for" a legal impediment. The foster child or stepchild was intended to be placed on an equal footing with natural and adopted children where these statutory conditions are met.

The absence of the consent of a minor's natural parent to an adoption cannot constitute the actual cause of a failure of a decedent to adopt the individual, where a decedent fails to adopt the individual for many years after the individual reaches the age of majority. There may be many reasons for the failure to adopt the individual as an adult. As noted in *Stevenson, supra*, it may be that it seemed less important to adopt the individual at that point. If so, that would weigh against the conclusion that a decedent considered the individual to be one of his or her "children." Perhaps there had been a change in the nature or quality of their relationship. Perhaps the decedent was motivated to adopt the individual only to provide emotional and financial support during the individual's minority. If a decedent wanted to provide such an adult with a share of his or her estate, the decedent could do so by adopting the individual, which would remove all doubt as to whether the decedent considered the individual to be his or her "child." If the decedent determined that the process of adoption is too cumbersome, expensive, or no longer necessary to achieve estate planning goals, he or she could also write a will to provide for the individual. Where a decedent takes neither of these actions, it is fair to conclude that when many years pass without an adoption after the legal impediment ceases to exist, the decedent had other reasons for not effectuating the adoption.

The reasoning of the *Stevenson* court invites claims by a stepchild or foster child if at any time during his minority the stepparent expressed a desire to adopt but was denied the consent of the natural parent. Any such child could claim an intestate share of the decedent's estate at his death—no matter how many years elapsed after the removal of the legal impediment. Operating

from the stalest sort of evidence,[11] the probate court must then determine whether, "but for" that legal impediment the decedent would have adopted the claimant during his minority and must negate the existence of other reasons for decedent's abandonment of the adoption. In such cases, of course, the decedent is unavailable to rebut these claims asserted by persons with a direct financial interest. Often, the only corroborating testimony is from the nonconsenting parent who may also be financially interested in the outcome. Typically, there will be no other disinterested third parties to verify the decedent's intent, since the subject matter is commonly considered to be of a highly personal and private nature. We do not think that *Stevenson*'s interpretation would allow for stepchild or foster child succession only in "very limited situations, with the necessary safeguards incorporated by treating the case like an adoption," which was the express purpose of the amendment to section 6408. Nor would it make probate more efficient or expeditious. Such a construction of the statute would invite sham or marginal claims, which is inconsistent with the Legislature's intent in promoting expediency in the probate process.[12]

The *Stevenson* holding was also based on the conclusion that the Legislature could not have meant to exclude adult stepchildren as a class. The Legislature's primary concern must have been for the care and protection[13] of minor children who were treated as "children" by a decedent, would have been adopted by the decedent if possible, and should receive their rightful share of the estate. There is, however, nothing in the statutory language which indicates that the "but for" language is inapplicable to adults. Nor is there anything in the legislative history evidencing such an intent. In any event, our holding does not rule out the possibility of an adult stepchild or foster child succeeding to an intestate estate under subdivision (e) of section 6408. First, such individuals would be included under the provisions of section 6408, subdivision (e) if some legal impediment other than minority continues to frustrate the adoption. Secondly, such persons should be entitled to claim where the decedent dies shortly after the claimant reaches the age of majority and an adoption could not reasonably have been accomplished during the interim. Once an adoption becomes possible, the intestate should

[11]Such evidence would, typically, otherwise be hearsay except for the "family history" exception to the hearsay rule. (Evid. Code, § 1311; *Estate of Lind, supra,* 209 Cal.App.3d at p. 1432.)

[12]We note that *Stevenson* appeared to rely only upon the Law Revision Commission reports and perhaps did not have available the extensive legislative history which is part of this record.

[13]The existing Probate Code was described as a "comprehensive scheme . . . including specific provisions on . . . family protection." (Elihu Harris, Chairman of the Assem. Com. on Judiciary and prepared by the consultant for the Com., Dig., Assem. Bill No. 25 as amended on Apr. 20, 1983.)

be given a reasonable time within which to contemplate the ramifications of the adoption and to initiate the proceedings. Our holding is also consistent with the language of section 6408, subdivision (e), which requires that the parties' relationship last through their "joint lifetimes." If adult nonadoptees were not intended to be included, then the language requiring a continuous parent-child relationship "through the parties' joint lifetimes" would be surplusage.

We specifically reject the statement by the Sixth District that once the foster child or stepchild reaches adulthood, the "parties may decide that adopting the child is not so important," but that the child should nevertheless be treated as an adopted child. There are many reasons for formalizing a parent-child relationship besides the care and protection of a minor. Adoption implicates estate tax planning (e.g., credits or exemptions for property passed to "family member"); construction of insurance policies (e.g., "family member" exclusion); right to recover for wrongful death; right to sue or be sued for negligence; dependency matters (e.g., reunification services for stepparent); and custody/visitation issues (as with "grandchildren" of the stepparent or foster parent).

Stepchildren and foster children have historically been excluded from intestate succession schemes. A stepchild relationship is created automatically by the marriage of two adults where one or both have children. According to the parties in this action, a foster child relationship is created by a relationship between a custodial natural parent and a live-in companion.[14] Thus, any situation in which an adult provides care and support to a minor could be characterized as a foster child situation. However, a stepchild or foster child does not automatically become the "child" of the stepparent or foster parent for purposes of inheritance. A stepchild or foster child who has at one time lived with a stepparent or foster parent, may not be considered a "child" by that person, on an equal footing with any other natural or adopted children and on a superior footing to other next of kin, such as siblings or parents. Where that person wishes to adopt the stepchild or foster child and cannot *only* because of the withholding of consent by a third party or other legal impediment, the child should not be deprived.

Our construction of section 6408, subdivision (e) injects a strong dose of certainty into the operation of that subdivision. Many persons intentionally

---

[14]We express no opinion as to whether appellant is a "foster child" within the meaning of the statute. Health and Safety Code section 1527, subdivision (c) defines "foster child" as a person under the age of 19 who has been placed under the care and supervision of licensed foster parents. At oral argument, appellant contended that "foster child" means "de facto child." We express no opinion as to whether the Legislature intended to include de facto children within the term "foster child." We do note, however, that the term de facto child is nowhere found in the statute or legislative history.

die intestate because the statutory scheme satisfies the basic goal of allowing their closest kin to succeed to their estates. As noted above, the principal purpose of our intestacy laws is to further the intended distribution of the intestate's property. The *Stevenson* construction creates uncertainty as to how the statutory scheme will operate whenever a stepparent or foster parent relationship has existed. Thus, individuals who would have been satisfied to die without any formal estate plan—knowing that their estates will pass to their natural or adopted children and no others—may be forced to the time and expense of preparing one if they have ever had a stepchild or foster child and intend to exclude that child. We do not think that this was the intent of the Legislature in adding subdivision (e), especially in light of the "limited situations" language cited above.[15]

In addition, this construction is more likely to further the primary purpose of the intestacy laws—to fulfill the intention of intestates who are unlikely to have wished to provide equally for their natural and adopted children on the one hand and their voluntarily unadopted stepchildren or foster children on the other.

Here, we assume to be true the stipulated fact that appellant was a foster child engaged in a parent-child relationship with decedent throughout their joint lifetimes. We further assume to be true the stipulated fact that appellant's mother withheld consent to appellant's adoption by decedent at one point during appellant's teenage years. However, there is no evidence that any legal impediment to appellant's adoption existed after he reached the age of majority, 16 years prior to decedent's death. Nor can there be any argument that decedent did not have a reasonable time to adopt appellant during the 16 years after appellant reached the age of majority and prior to decedent's death. Therefore, no triable issue of fact exists that appellant would have been formally adopted by decedent "but for" a legal impediment. We conclude, on the undisputed facts presented, decedent's failure to adopt appellant was not caused by the legal impediment of appellant's mother's refusal to consent to the adoption during appellant's minority. Accordingly, as a matter of law, appellant has no ability to make a claim on decedent's estate pursuant to section 6408, subdivision (e). Thus, the trial court properly granted summary judgment.

---

[15]Our opinion has no effect on the ability of a stepchild to claim under an "equitable adoption" theory if there has been an express contract to adopt. (See *Estate of Stewart* (1981) 122 Cal.App.3d 625, 627-628 [176 Cal.Rptr. 142]; *Estate of Wilson* (1980) 111 Cal.App.3d 242 [168 Cal.Rptr. 533].)

## DISPOSITION

The judgment is affirmed. Appellant shall bear respondent's costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 24, 1993. Panelli, J., and Baxter, J., were of the opinion that the petition should be granted.