[No. A097519. First Dist., Div. Five. Oct. 24, 2002.]

Estate of AMELIA FURIA, Deceased.
IRENE POLI, as Executor, etc., Petitioner and Respondent, v.
NANETTE ANN FURIA CAMERON, Claimant and Appellant.

**COUNSEL**

Steve H. Spiegelman for Claimant and Appellant.

Shapiro, Galvin, Shapiro, Piasta & Moran and Daniel J. Galvin III for Petitioner and Respondent.

**OPINION**

**GEMELLO, J.**—Does an equitably adopted child have a right to inherit the property of her testate "grandparent," whose will directs that her property shall go to the "surviving issue" of her own children? We hold that she does not. The doctrine of equitable adoption creates a contractual right to receive property, but it does not convey to the equitable child all the rights of an heir under the Probate Code. The trial court denied Nanette Ann Furia Cameron's heirship petition, which sought to establish a right to inherit from the estate of her stepgrandmother, and we affirm.

## Background

The facts are undisputed. Nanette Ann Leach (Nanette[1]) was born in 1952. When she was age two, her parents divorced, and her biological father severed all ties with her. When she was four, her mother married Quinto Furia, Jr. (Quinto Jr.), and Nanette became known as Nanette Ann Furia.

Quinto Jr. began adoption proceedings in 1957, but discontinued them when Nanette's biological father could not be located. Instead, Nanette was given a Roman Catholic baptism as Nanette Ann Furia. Quinto Jr. raised Nanette as his daughter, and they continued to treat each other as father and daughter in all respects until his death in 1991. When he passed away, Nanette and Quinto Jr.'s biological children shared equally in his estate.

Amelia Furia (Amelia), Quinto Jr.'s mother, similarly treated Nanette as her granddaughter. She died testate on March 17, 2000. Her will named respondent Irene Poli (Poli), Nanette's paternal stepaunt, as executor. Poli filed her petition to administer Amelia's estate in June 2000. On October 1, 2001, Nanette filed an heirship petition, seeking to be declared an heir entitled to a distribution. There was no objection in the trial court. On December 27, 2001, the trial court denied the petition, finding that Nanette was not entitled to inherit.

Nanette has timely appealed. There is no opposition to her appeal.

## Discussion

Because Amelia died testate, the distribution of her estate is governed by her will. Given that Amelia's husband predeceased her, the will bequeaths the estate to Quinto Jr. and his four siblings by name. In the event of predeceasement—as happened here for Quinto Jr.—the named heir's share passes to "the surviving issue of the deceased devisee." The question for us is how to interpret the term "issue" in Amelia's will.

"Words in a private instrument are ordinarily, in the absence of a showing of contrary intent, given the same effect as by statute or case law. [Citation.] Appellant did not offer any evidence that the [testator], in using the word 'issue,' intended to include or exclude any particular persons. We must, therefore, give the term its statutory meaning." (*Weir v. Ferreira* (1997) 59 Cal.App.4th 1509, 1514 [70 Cal.Rptr.2d 33].) Similarly, nothing in this record shows that Amelia had any particular intent when she used the word issue. In the absence of proof of a contrary intent, the statutory or case law meaning governs. (*Ibid.*)

---

[1]First names are used for clarity. No disrespect to the persons named is intended.

There is some debate over whether we should look to the law as it existed when the will was made in 1960, or when Amelia passed away in 2000. (See *Estate of Dye* (2001) 92 Cal.App.4th 966, 973-974 [112 Cal.Rptr.2d 362].) The statutory definition of "issue" was not added until 1983. However, the definition is based on the Uniform Probate Code definition, and we find nothing to suggest that it modified or altered the previous understanding of the term. Nor have we have found other material differences in the law as it existed in 1960 and 2000. Thus, we need not resolve this question. The conclusions we reach are the same under either body of law.

Probate Code section 50[2] defines "issue" as a person's "lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent." In turn, "child" is defined as "any individual entitled to take as a child under this code by intestate succession from the parent whose relationship is involved." (§ 26.)

Section 6454 governs intestate succession by and through a stepparent such as Quinto Jr. "For the purpose of determining intestate succession by a person or the person's issue from or through a foster parent or stepparent, the relationship of parent and child exists between that person and the person's foster parent or stepparent if both of the following requirements are satisfied . . ." (§ 6454.) First, the relationship must have begun "during the person's minority and continued throughout the joint lifetimes of the person and the person's foster parent or stepparent." (§ 6454, subd. (a).) Second, it must be "established by clear and convincing evidence that the foster parent or stepparent would have adopted the person but for a legal barrier." (§ 6454, subd. (b).) The first requirement has been met: It is undisputed that Nanette and Quinto Jr. acted toward each other as father and daughter from the time Nanette was age four until Quinto Jr.'s death.

As for the second requirement, the need for a legal barrier, our Supreme Court recently has resolved a split among the Courts of Appeal over the requirement's correct interpretation. (*Estate of Joseph* (1998) 17 Cal.4th 203 [70 Cal.Rptr.2d 619, 949 P.2d 472].) Before *Estate of Joseph*, two courts had divided over whether the legal barrier had to exist only when adoption was contemplated or attempted (*Estate of Stevenson* (1992) 11 Cal.App.4th 852 [14 Cal.Rptr.2d 250]) or throughout the parties' joint lifetime (*Estate of Cleveland* (1993) 17 Cal.App.4th 1700 [22 Cal.Rptr.2d 590]). Siding with *Estate of Cleveland*, the Supreme Court held that the requirements of section 6454 are satisfied only when a legal barrier to adoption persists until death. (*Estate of Joseph, supra,* 17 Cal.4th at pp. 211-212.)

Nanette raises as the legal barrier to her adoption the absence of consent from her biological father. However, she offers no evidence that any barrier

---

[2]All statutory references are to the Probate Code unless otherwise indicated.

remained once she reached the age of majority, more than 20 years before Quinto Jr.'s death. (See Fam. Code, § 9302, subd. (b) [parental consent not required for adult adoption].) Given these facts, *Estate of Cleveland* is on point. There, the petitioner had a parent-child relationship with his foster father throughout their lifetimes, but the petitioner's mother withheld consent to adoption when he was a teenager. (17 Cal.App.4th at p. 1713.) This momentary impediment did not satisfy section 6454, subdivision (b)'s requirement of an ongoing legal barrier, and the petitioner was thus precluded from inheriting under section 6454. Similarly, here the absence of a legal barrier means that Nanette does not qualify as Quinto Jr.'s child under section 6454.

In the alternative, Nanette argues that she was equitably adopted. Section 6455 provides that section 6454 does not limit or alter the common law doctrine of equitable adoption. The doctrine of equitable adoption principally applies when the equitable "parent" dies intestate. Its principles were most clearly spelled out by this district's decision in *Estate of Wilson* (1980) 111 Cal.App.3d 242 [168 Cal.Rptr. 533]. " ' "[C]ourts, in their effort to protect and promote the welfare of the child, have given effect to a contract to adopt, where it has been fully performed on the part of the child, although it was invalid under the laws where it was made." ' " (*Estate of Wilson, supra,* 111 Cal.App.3d 242, 244, quoting *Estate of Grace* (1948) 88 Cal.App.2d 956, 963 [200 P.2d 189].) " '[E]quity will specifically enforce an oral contract to adopt or a contract of inheritance.' " (*Estate of Wilson, supra,* 111 Cal.App.3d at p. 245, quoting *Estate of Rivolo* (1961) 194 Cal.App.2d 773, 777 [15 Cal.Rptr. 268].) In contrast to section 6454, there is no legal barrier requirement under the doctrine of equitable adoption. The doctrine applies to those who " 'though having filled the place of a natural born child, through inadvertence or fault [have] not been legally adopted,' " so long as the evidence establishes an intent to adopt. (*Estate of Wilson, supra,* 111 Cal.App.3d at p. 246, quoting *Estate of Radovich* (1957) 48 Cal.2d 116, 130 [308 P.2d 14] (dis. opn. of Schauer, J.).)

Of critical importance to this case, equity does not grant the equitably adopted child a right to inherit, and does not change her status as an heir. (*Estate of Wilson, supra,* 111 Cal.App.3d at pp. 246, 247.) Instead, it supports the fiction that an adoption has transpired and grants the equitable child a portion of the intestate decedent's estate as the measure of the consideration due for fulfilling her duties as daughter. (*Ibid.*) That grant emanates from a contractual right, not a right of inheritance under the Probate Code.

The right to receive property under equitable adoption thus differs in two key respects from the right to receive property under section 6454: On the

one hand, no legal impediment to actual adoption need be shown, but on the other, the right to receive property is only a contractual right which does not extend to the property of third parties. In contrast, if section 6454's requirements are met, the child acquires a right to inherit not only *from* the parent but also *through* the parent. (§ 6454; see *Estate of Lind* (1989) 209 Cal.App.3d 1424, 1431 [257 Cal.Rptr. 853] [decided under precursor statute to § 6454].)

The first of these differences between sections 6454 and 6455 means that under the doctrine of equitable adoption, unlike under section 6454, Nanette need not show that a legal barrier persisted that prevented her adoption. Without that requirement, she might be able to qualify as an equitably adopted child and obtain the benefits of the doctrine, and we assume for purposes of this opinion that Nanette was Quinto Jr.'s equitably adopted child.[3] However, even assuming Nanette was Quinto Jr.'s equitably adopted child, her rights are premised on contract as distinguished from rights of inheritance and heirship. The status of an equitably adopted child would not give Nanette the right to inherit from or through Quinto Jr. It would give Nanette a contractual right to a portion of Quinto Jr.'s estate. In other words, because Nanette cannot satisfy the requirements of section 6454, she is not an heir. The doctrine of equitable adoption will not make her an heir.

Because Nanette is not entitled to inherit from Quinto Jr. under section 6455 nor under section 6454, she does not meet section 26's statutory definition of "child," "any individual entitled to take as a child *under this code by intestate succession from the parent whose relationship is involved.*" (§ 26, italics added.) Consequently, she does not qualify as Amelia's issue for purposes of her will. On this basis, the trial court properly denied Nanette's heirship petition.

We are sympathetic to Nanette's plight; by our decision, we do not disparage or diminish the genuine bond she appears to have had with both her stepfather, Quinto Jr., and her stepgrandmother, Amelia. However, in probate law, there is a compelling need for consistent, bright-line rules. Individuals are faced with the difficult task of conveying their wishes in a manner that ensures that those wishes will be honored when they die and can no longer speak. Courts are faced with the difficult task of effectuating those wishes without benefit of the decedents' testimony. If predictable default rules are enforced, a potential testator can decide whether she needs a will to express any different intentions she may have and what provisions she must include; if predictable default rules are enforced, a court ran rely on the

---

[3]Although the trial court made no factual findings, the evidence submitted to the trial court clearly supported the notion that Nanette was Quinto Jr.'s equitably adopted child.

decedent's actions or failure to act in determining how to enforce correctly her wishes. Section 6454 and the doctrine of equitable adoption, by their own terms, do not apply here to grant Nanette a right of inheritance. The law provides stepparents a means to legalize their bonds by adopting their stepchildren once they reach the age of majority, if not sooner. The law further provides stepgrandparents a means to ensure that their stepgrandchildren inherit by making specific bequests. Neither action was taken here. By her own admission, Nanette has shared fully in Quinto Jr.'s estate. We are without authority to grant her a share of Amelia's estate.

## DISPOSITION

The order denying Nanette Ann Furia Cameron's heirship petition is affirmed.

Jones, P. J., and Simons, J., concurred.